IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

JENNIFER CHANCE,

       Plaintiff,

vs.                                           CASE NO. 1:18-cv-75-MW-GRJ

ANDREW SAUL,[1]
Commissioner of Social Security,

       Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security Disability Insurance Benefits ("SSDI"). The Commissioner has answered, and both parties have filed briefs outlining their respective positions. ECF Nos. 8, 14, 15. For the reasons discussed below, it is recommended that the Commissioner's decision be affirmed.

## I. PROCEDURAL HISTORY

Plaintiff's application alleged disability beginning May 12, 2014, due to a neck injury, migraines, nerve pain, and depression.  R. 172, 220.   Her application was denied initially and upon reconsideration.  R. 93-95, 99-

---

[1] Nancy Berryhill was the acting Commissioner at the time of filing. She has since been replaced by Andrew Saul. Therefore, the clerk should change the name of the defendant. Because Andrew Saul has been confirmed by the Senate, his proper title is "Commissioner" rather than "Acting Commissioner."

103.  Following a hearing, an administrative law judge ("ALJ") issued an

unfavorable decision, finding that Plaintiff was capable of performing a

reduced range of work at the light exertional level.  R. 9-24.  The Appeals

Council denied review.  R. 1-5.  Plaintiff then filed the instant appeal.  ECF

No. 1.  Plaintiff argues that the ALJ's decision is not supported by

substantial evidence because the ALJ erred in affording little weight to the

opinion of her treating physician and erred in his assessment Plaintiff's

subjective complaints.  ECF No. 14.

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by

substantial evidence. *See* 42 U.S.C. § 405(g) (2012). Substantial evidence

is more than a scintilla, *i.e.*, the evidence must do more than merely create

a suspicion of the existence of a fact and must include such relevant

evidence as a reasonable person would accept as adequate to support the

conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing

*Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d

580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial

evidence, the district court will affirm, even if the reviewer would have

reached a contrary result as finder of fact, and even if the reviewer finds

that the evidence preponderates against the Commissioner's decision.

*Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358

(11th Cir. 1991). The district court must view the evidence as a whole,

taking into account evidence favorable as well as unfavorable to the

decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835,

837 (11th Cir. 1992) (holding that the court must scrutinize the entire record

to determine reasonableness of factual findings); *Parker v. Bowen,* 793

F.2d 1177 (11th Cir. 1986) (finding that the court must also consider

evidence detracting from evidence on which the Commissioner relied).

However, the district court will reverse the Commissioner's decision on

plenary review if the decision applies incorrect law, or if the decision fails to

provide the district court with sufficient reasoning to determine that the

Commissioner properly applied the law. *Keeton v. Dep't Health & Human

Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

　　　The law defines disability as the inability to do any substantial gainful

activity by reason of any medically determinable physical or mental

impairment that can be expected to result in death, or has lasted or can be

expected to last for a continuous period of not less than twelve months. 42

U.S.C. §§ 416(I), 423(d)(1) (2012); 20 C.F.R. § 404.1505 (2015).[1] The

impairment must be severe, making Plaintiff unable to do her previous

work, or any other substantial gainful activity which exists in the national

economy. § 423(d)(2); 20 C.F.R. §§ 404.1505–404.1511.

The ALJ must follow five steps in evaluating a claim of disability. 20

C.F.R. § 404.1520. The claimant has the burden of proving the existence of

a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936

F.2d 1215, 1218 (11th Cir. 1991). First, if a claimant is working at a

substantial gainful activity, he is not disabled. § 404.1520(b). Second, if a

claimant does not have any impairment or combination of impairments

which significantly limit his physical or mental ability to do basic work

activities, then he does not have a severe impairment and is not disabled. §

404.1520(c). Third, if a claimant's impairments meet or equal an

impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is

disabled. § 404.1520(d). Fourth, if a claimant's impairments do not prevent

him from doing past relevant work, he is not disabled. §§ 404.1520(e)–(f).

Fifth, if a claimant's impairments (considering her RFC, age, education, and

---

[1] All further references to 20 C.F.R. will be to the 2015 version, unless otherwise specified.

past work) prevent him from doing other work that exists in the national economy, then he is disabled. § 404.1520(g).

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff. *Walker v. Bowen*, 826 F.2d 996, 1002 (11th Cir. 1987); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy. *Doughty*, 245 F.3d at 1278 n.2.[2]

## III. SUMMARY OF THE RECORD

### A. ALJ's Decision

The ALJ determined that Plaintiff has the severe impairments of cervical degenerative disc disease, status post fusion; shoulder impingement; migraine headaches; anxiety; and depression.  R. 14. Plaintiff does not have an impairment or combination of impairments that

---

[2] In *Doughty* the court explained this burden shifting as follows:

> In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.

> *Id.* (internal citations omitted).

meets or equals the listings.  R. 15.  The ALJ determined that Plaintiff has the RFC for light work, with additional exertional, postural, mental, and social limitations. *Id*.  The ALJ concluded that Plaintiff's subjective complaints regarding the limiting effects of her impairments were not entirely consistent with the objective medical evidence and other evidence of record.  R. 17.  To support this finding, the ALJ extensively discussed the relevant medical evidence, including the opinion of Plaintiff's treating physician, who assessed greater limitations. The ALJ found that the treating physician's opinion was entitled to little weight because it was not supported by his own treatment notes.  R. 22.  The ALJ afforded great weight to the opinion of a state agency medical consultant who opined that Plaintiff had the capacity for work at the light exertional level, with additional limitations, because that opinion was supported by rather benign objective medical findings, a course of conservative treatment, and the record as a whole.  *Id.*

The ALJ found that Plaintiff had no past relevant work due to special accommodations that Plaintiff received on the job.  Based upon the testimony of a VE, the ALJ determined that in light of Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such

as small parts assembler, leader (tier), and hand packager.  The ALJ

therefore found that Plaintiff was not disabled.  R. 23-24.

### B.  Medical and Opinion Evidence

Plaintiff's appeal focuses on the asserted limiting effects of pain

stemming from her cervical degenerative disc disease, and particularly

upon the limitations assessed by her treating physician, Dr. Schabert.  *See*

ECF No. 14.  Accordingly, the Court's summary focuses on the medical

records that are pertinent to her arguments.

The ALJ concluded that Plaintiff's physical findings were relatively

benign following her neck surgery in May 2014.  R. 22.  At a follow-up visit

with her neurosurgeon, Dr. Eric Scott, one week after surgery, Plaintiff

stated that she was doing well overall.  On examination, her upper

extremity strength was intact bilaterally.  R. 539.  In a treating source

neurological questionnaire, Dr. Scott noted that at that time Plaintiff had full

grip strength and full lower extremity strength.  She did not require a

handheld assistive device for ambulation.  R. 729-30.

Plaintiff sought pain management treatment with Dr. Prathima Reddy

from June to September 2014.  Plaintiff rated her pain level as 7 out of 10

and was wearing a cervical collar.  Examination findings were consistent

with cervical tenderness.  Muscle spasm and trigger points were noted at

the right scapula and trapezius.  However, Plaintiff remained neurologically intact, there was no thoracic spine tenderness, and her gait was normal. Radiography revealed a stable fusion.  Treatment consisted of pain medication, including Nucynta, Neurontin, Robaxin, and Zolpidem.  R. 598-663.

Plaintiff underwent a neurological examination with LaToya Foxx, DO, in September 2014.  Plaintiff complained of worsening pain since her surgery and headaches, but she reported that her pain was well-controlled on gabapentin.  Examination findings revealed that she was neurologically intact with full strength and normal motor tone in all extremities, normal gait, intact memory, and normal attention span and concentration.  Dr. Foxx concluded that Plaintiff's cervicalgia and radicular pain was well-controlled with gabapentin.  Subsequent progress notes from November 2014 to February 2015 do not reflect new pain complaints.  Plaintiff was diagnosed with cervicalgia, cervical spondylosis, myofascial pain, and shoulder impingement symptoms.  Plaintiff was continued on pain medication and underwent a bilateral C2 nerve block.  Plaintiff did not treat with Dr. Foxx after February 2015.  R. 664-69, 670-79, 731-51.

At her first appointment with Dr. Schabert three months after surgery, Plaintiff reported that she had "significant improvement" in her neck pain

and the pain radiating down her arms.  R. 549. Imaging studies consistently

showed that her cervical fusion was stable with no nerve root compression.

R. 481, 538, 664.  Dr. Schabert's treatment notes documented some

continuing cervical tenderness and limitation of motion, but consistently

showed that Plaintiff had no motor or sensory deficits and that she walked

with a normal gait.  *See* R. 549, 766, 768, 770, 772, 774, 776, 778, 784,

786, 789, 794, 796, 798, 800.

Dr. Schabert's prescribed treatment was conservative, consisting of

stretches and osteopathic manipulative therapy ("OMT").  R. 547, 549, 767,

769, 771, 773, 775, 779, 782, 787, 789, 795, 797, 799, 801, 805, 809, 813,

815, 820-21, 827, 835.  Plaintiff usually reported to Dr. Schabert that

manual therapy significantly relieved her neck pain.  R. 547, 766-68, 772,

774, 776-78, 782, 784, 786, 789, 794, 796, 798, 800, 805, 808, 810, 812,

814, 816, 819, 821, 827, 829, 840.  Although Plaintiff experienced some

exacerbation of symptoms, she expressed a need for no more than

conservative interventions to improve her symptoms.  *See* R. 770.

Further, Dr. Schabert's records reflect that Plaintiff's symptom

exacerbation typically followed discrete instances of strenuous activity.  In

May 2015, Plaintiff reported exacerbation of symptoms after engaging in

lifting and pulling after her daughter got a pony.  R. 814. In November

2015, Plaintiff stated that her neck pain had been minimal since her last visit and treatment with Dr. Schabert, but she had experienced increased upper back pain after giving her daughter a "horse" ride".  R. 796.  In August 2016, Plaintiff related that her pain was minimal following her previous visit, but it had worsened after some travel.  R. 786.  In November 2016, Plaintiff's pain worsened after her garage door opener broke and she had to manually raise and lower the door.  R. 778.   But in May 2016, Plaintiff reported to Dr. Schabert that she was modifying her diet and exercising regularly in order to lose weight.  R. 791.  In August, September, November, and December 2016, Plaintiff reported to Dr. Schabert that she was still "exercising regularly".  R. 774, 776, 778, 782, 784.

In May 2017, Dr. Schabert completed an RFC checklist provided by Plaintiff's disability counsel in which he opined that Plaintiff could sit up to 30 minutes at one time and for a total of only 1-2 hours per day; stand for 1-2 hours at a time and for a total of only 1-2 hours per day, and that she could sit or stand at will for only 1-2 hours per day.  He opined that Plaintiff could lift 5 to 9 pounds frequently and 10 to 15 pounds occasionally. Dr. Schabert stated that his answers were based on Plaintiff's "ongoing degenerative disease of the cervical spine noted on imaging with related pain in the neck and upper extremities."  R. 921-22.

Dr. Schabert completed a "Clinical Assessment of Pain" checklist in which he confirmed that Plaintiff reported experiencing "marked" pain (6 or 7/10).  Dr. Schabert also rated her pain as "marked".  According to the checklist, "marked" pain interferes with concentration, persistence and pace, and prevents the patient from completing tasks relating to the activities of daily living without frequent (hourly) interruptions for pain relief. Such pain, assuming an 8-hour work day, 5 days a week (with standard breaks) would prevent the patient from completing tasks at work without more frequent breaks or interruptions for pain relief. Dr. Schabert opined that Plaintiff had a "marked" inability to complete a normal workday and workweek without interruptions from pain and to perform at a consistent pace without an unreasonable number and length of rest periods; while other restrictions were assessed as mild or moderate.  Dr. Schabert noted that Plaintiff "has difficulty with prolonged sitting or standing.  Any sitting >10 minutes continuously is very difficult." R. 923-27.

An Agency reviewing physician, Dr. Sunita Patel, reviewed Plaintiff's records and opined that Plaintiff could stand or walk for 6 hours, sit for 6 hours, and lift 10 pounds frequently and 20 pounds occasionally in an 8-hour workday.  Dr. Patel also assessed that Plaintiff had postural and some

manipulative limitations, as well as some environmental limitations.  R. 84-87.

## C.  Hearing Testimony

Plaintiff was 43 years old on her alleged disability onset date.  She testified that she injured her neck in a car accident in 2009, and she sought chiropractic care in the office where she worked but it did not help.  She testified that surgery did not help.  Plaintiff testified that the longest she could work at a computer was 2.5 hours, and that she could stand up to 2 hours before needing to lay down with an ice pack.  She can walk no more than 30 minutes and lift up to 10 pounds.  Plaintiff stated that her average pain is 6 or 6.5/10, and that the pain radiates into her arms and hands.  A side effect of her pain medication is tiredness.  Plaintiff testified that she has difficulty grasping and using her fingers for fine manipulation such as buttons.  She spends most days in bed, though she does what she "has to do" to get her daughter to school.  Plaintiff testified that her mother helps with driving.  Plaintiff does not cook except for preparing microwave meals, and friends help her with household chores.  She usually takes naps in the daytime.  About once per week her pain is worse than average, about 8 or 9/10, and she has to lay down and use ice for relief.  R. 32-55.

The ALJ posed a hypothetical to the VE that assumed an individual of the same age and education as Plaintiff with the RFC for light work with certain postural, exertional, mental, and social limitations, including the limitation that the person required a sit/stand option every 30 minutes. The VE identified jobs that such a person could perform, including small parts assembler, leader (tier), and hand packager. With the additional limitation that the person would be off-task at least 20 percent of the workday due to a combination of symptoms including pain, the VE testified that the person would be unemployable. R. 55-57.

## IV. DISCUSSION

### A. ALJ's Evaluation of Treating Physician Opinion

Plaintiff alleges that the ALJ "violated the treating physician rule." ECF No. 14 at 16. Plaintiff conclusionally alleges that based on Dr. Schabert's summary RFC and pain checklists she is "clearly disabled" and the ALJ should have afforded controlling weight to those assessments. *Id.* at 18-19.

It is well-established that substantial or considerable weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless "good cause" is shown to the contrary.[1] If a treating physician's

---

[1] *Crawford v. Commissioner of Social Security*, 363 F. 3d 1155, 1159 (11th Cir. 2004)

opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.[2]  To determine the weight to be accorded a treating physician's opinion, the ALJ must consider the factors set forth in 20 C.F.R. § 404.1527(d), which include the length of treatment, frequency of examination, nature and extent of the treatment relationship, support of opinion afforded by medical evidence, consistency of opinion with the records as a whole, and specialization of the treating physician.  The Court "will not second guess the ALJ about the weight the treating physician's opinion deserves so long as [the ALJ] articulates a specific justification for it." *Hunter v. Comm'r of Soc. Sec.*, 808 F.3d 818, 823 (11th Cir. 2015).

Here, the ALJ articulated specific reasons for affording Dr. Schabert's summary checklists only limited weight.  The ALJ explained that the opinion was not supported by Dr. Schabert's own treatment notes, which showed improvement following Claimant's cervical fusion in May 2014 and good

---

(citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997)); 20 C.F.R. § 404.1527(d).

[2] 20 C.F.R. § 404.1527(d)(2).

relief with manual therapy.  R. 22.

As the ALJ discussed, and as summarized above, Plaintiff's physical findings were relatively benign following her neck surgery.  In the written decision the ALJ pointed to the numerous treatment notes documenting that Plaintiff consistently exhibited no motor or sensory deficits and that she walked with a normal gait.

As discussed above, Dr. Schabert's notes reflect that Plaintiff frequently reported that the OMT therapy reduced her pain to mild levels. Notably, the periods of symptom exacerbation were related to discrete episodes involving more strenuous exertion, such as activities involving her daughter's pony, traveling, or manually raising the garage door.

Moreover, as discussed *infra,* Plaintiff frequently reported during her treatment with Dr. Schabert that she was continuing to engage in regular exercise. In contrast, the ALJ gave greater weight to Dr. Patel's opinion, finding Plaintiff capable of a reduced range of light work, because it was more consistent with the rather benign physical findings of record, Plaintiff's good response to conservative treatment, and the record as a whole.  R. 22.

This Court will not second guess the ALJ's decision to afford little weight to Dr. Schabert's opinion because the ALJ articulated a specific

justification for doing so, and the ALJ's rationale is supported by substantial evidence.  *See Hunter,* 808 F.3d at 823.

### B.  ALJ's Evaluation of Subjective Complaints

Plaintiff contends that the ALJ failed to give adequate reasons as to why he discredited Plaintiff's pain testimony and her concomitant limitations.  Plaintiff conclusionally alleges that the "very nature" of her impairment can reasonably be expected to cause pain.  ECF No. 14 at 22.

Plaintiff reported that due to severe radiating neck pain, she could stand for only an hour at a time, could walk for only 30 minutes to an hour at a time, could lift up to 10 pounds, and had problems with fine and gross manipulation.  R. 34-36. Plaintiff also alleged that she experienced migraine headaches. R. 36.

To establish disability on the basis of subjective complaints, Plaintiff must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of the alleged symptoms or that the medical condition could be reasonably expected to give rise to the alleged symptoms. *See* 20 C.F.R. § 404.1520(c); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("Dyer failed to set forth the requisite objective medical evidence that confirmed the severity of the alleged pain . . . or that the objectively determined medical conditions are of such a

severity that they can be reasonably expected to give rise to the alleged

pain."); *Wilson*, 284 F.3d at 1225-26; *Edwards v. Sullivan*, 937 F.2d 580,

584 (11th Cir. 1991).  In analyzing the evidence, the focus is on how an

impairment affects Plaintiff's ability to work, and not on the impairment

itself. *See* 20 C.F.R. § 404.1521; *McCruter v. Bowen*, 791 F.2d 1544, 1547

(11th Cir. 1986) (severity of impairments must be measured in terms of

their effect on the ability to work, not from purely medical standards of

bodily perfection or normality).

The ALJ assessed Plaintiff's subjective complaints consistent with the

framework established under Social Security Regulation ("SSR") 16-3p.

*See* R. 17.  As the Eleventh Circuit has explained:

> SSR 16-3p rescinded a previous Social Security ruling that concerned
> the credibility of a claimant. SSR 16-3p, 82 Fed. Reg. 49,462, 49,463
> (Oct. 25, 2017). SSR 16-3p removed the use of the term "credibility"
> from its sub-regulatory policy because the Social Security
> Administration's (SSA) regulations did not use the term. *Id.* SSR 16-3p
> clarified that "subjective symptom evaluation is not an examination of an
> individual's character" and that a two-step evaluation process must be
> used. *Id.* Step one is to determine whether the individual has a medically
> determinable impairment that could reasonably be expected to produce
> the alleged symptoms. *Id.* at 49,463-64. Step two is to evaluate the
> intensity and persistence of an individual's symptoms, such as pain, and
> determine the extent to which an individual's symptoms limit her ability
> to perform work-related activities. *Id.* at 49,464-66. The Commission
> stated:
>
>> Consistent with our regulations, we instruct our adjudicators to
>> consider all of the evidence in an individual's record when they
>> evaluate the intensity and persistence of symptoms after they

find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms. We evaluate the intensity and persistence of an individual's symptoms so we can determine how symptoms limit ability to perform work-related activities for an adult . . . with a title XVI disability claim.

*Id.* at 49,463.  *Contreras-Zambrano v. Social Sec. Adm.*, 724 Fed.Appx. 700, 702-03 (11th Cir. 2018).[2]

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record.  R. 16-17.  The ALJ then conducted a thorough review of the record evidence and explained that the medical record and course of treatment did not support the degree of limitation that Plaintiff alleged.  R. 20. In particular, the ALJ explained that

---

[2] In October 2017, the SSA republished SSR 16-3p, clarifying that it was applicable beginning on March 28, 2016. *Id.* at 49,462, 49,468. The republished version noted that the SSA's adjudicators would apply SSR 16-3p to all determinations made on or after March 28, 2016, and that the SSA expected federal courts to use the version of the rule that was in effect at the time the SSA issued the decision under review. *Id.* at 49,468 n.27. The republished version further noted that the regulations regarding the evaluation of symptoms were unchanged.  The decision under review in this case was made on May 30, 2017, and therefore SSR 16-3p is applicable.  R. 24; *See Contreras-Zambrano*, 724 Fed.Appx. at 702-03.

following her surgery Plaintiff's fusion remained stable without needing further surgical intervention.  R. 19-20.  Updated imaging confirmed that the fusion was stable.  R. 18, 481, 538, 664.  Plaintiff's course of treatment was conservative, consisting of OMT, pain medication, and some injection therapy.  R. 19-20.  Neurologist Dr. LaToya Foxx agreed with Plaintiff that her pain was "well-controlled" on medication.  During Plaintiff's treatment with Dr. Schabert, she reported improvement in symptoms from the OMT and symptom exacerbation correlated with strenuous physical activity.  Plaintiff remained neurologically intact throughout her treatment.  Plaintiff's medical records documented only intermittent headaches that did not require treatment with medication such as Imitrex, nor had Plaintiff ever received emergency care for unresolved headaches.  R. 19-20.

The ALJ further noted that while Plaintiff described limited daily activities, several factors "weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled." R. 21.  Such factors included Plaintiff's activities as stated on her Function Report, which acknowledged the ability to care for her personal needs independently and provide care for her children (ages 2 and 11 at her alleged onset date), her ability to perform some household chores, prepare simple meals, drive a car, and shop for necessities.  R. 234-41.  The ALJ observed that while

Plaintiff alleged a need to lie down and take daily naps, no treating or examining physician had advised her of the need to do so.  R. 21.

The ALJ concluded that "the totality of the evidence does not support the degree of limitation alleged or preclude all work activity, particularly light work. In particular, her testimony and statements are not supported by clinical or laboratory findings establishing impairments that could reasonably be expected to cause such limitations, they are inconsistent with other evidence, and the overall evidence does not persuasively establish excess pain or greater limitations."  R. 21.

On this record, the undersigned concludes that the ALJ properly evaluated Plaintiff's subjective complaints of pain consistent with Agency rules and that the ALJ's RFC, finding that Plaintiff is capable of a reduced range of light work, is supported by substantial evidence.

## V.  RECOMMENDATION

It is respectfully **RECOMMENDED** that the decision of the Commissioner should be **AFFIRMED**.

**IN CHAMBERS** in Gainesville, Florida, on the 29th of August 2019.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.